## MILLER–VIDOR LUMBER CO. v. SCHREIBER et al. (No. 1910.)

Court of Civil Appeals of Texas. Beaumont. Jan. 23, 1930.

Rehearing Denied Feb. 12, 1930.

Jack M. Moore, O. J. Todd and C. S. Pipkin, all of Beaumont, for plaintiffs in error.

Dies, Stephenson & Dies, of Orange, for defendants in error.

WALKER, J. This is the second appeal in this case. The former appeal is reported in 298 S. W. 154, against which the Supreme Court refused the petition for writ of error filed by defendants in error. The trial from which this appeal was perfected was to the court without a jury, and in support of the judgment for defendants in error the following conclusions of fact and law were filed:

"Findings of Fact.

"Plaintiff's' claim of title consists of the following instruments:

"First: Assignment of certificate from James Enner to James Walea, covering certificate No. 17 for 320 acres of land.

"Second: Patent from State of Texas to James Enner, his heirs or assigns, for 320 acres of land by virtue of certificate No. 17.

"Third: Deed from James Walea to William Myers dated February 21, 1853, conveying 320 acres of land of the James Enner survey.

"Fourth: Deed from William Myers and wife to James Walea, dated 21st day of November, 1853, and conveying to grantee 320 acres of land of James Enner survey.

"Fifth: Deed from James Walea to John Merriman dated March 4, 1856, conveying 320 acres of land in the James Enner survey.

"Sixth:. Deed from John Merriman to C. L. Bonville and. wife Mary Ella Bonville, dated March 23, 1869, filed April 21, 1869.

"Seventh: Deed from Mary Ella Province et al. to .Sarah Adeline Bonville et al., dated June 8, 1877.

"Eight: Proof by Mrs. Florence Schreiber that C. L. Bonville was Mary Ella Bonville's first husband; that her second husband was P. P. Province; that by Mr. Bonville she had two girls and one boy; that the boy died when it was born; that the name of the oldest girl was Sarah Adeline Bonville, that she is dead; that she was married twice; that her first husband was William Bundy and she had one child by him, Charlie Bundy, who is now living; that her second husband was Leonard Richardson by whom she had a girl, Mary Richardson, and the next child was a boy, Joe Richardson, and the next one was Edna and the next one was Raymond; that the next daughter of Mary Ella and C. L. Bonville was Flavilla Bonville, whose first husband was Bud Watson; that both of them are dead; that they have three living children; that the first one is Henry Watson and the next one is Edith Watson, shown in the pleadings to be Edith Olsen; that by her second husband who was Jack Berwick she has one child and named Hazel Berwick; that Mary Ella Bonville married P. P. Province and had one child who was and is Mrs. Florence Schreiber.

"Defendant's chain of title consists of the following:

"Deed from William McFarland Lewis to A. M. Rogers, dated December 27, 1883; Deed of Trust from W. M. Rogers to D. McCall, dated June 17, 1885, to secure a note of $220; deed from A. M. Rogers to E. A. Smith dated July 8, 1890; deed of trust from E. A. Smith to B. Willey, dated October 13, 1891, to secure a note in the principal sum of $1,000; deed from E. A. Smith to E. A. Smith & Sons Lumber Company, dated August 2, 1906; release of deed of trust from Smith to Willey Oct. 13, 1891, deed from E. A. Smith Lumber Company to Orange Sawmill Company, dated February 4, 1907; deed from Orange Sawmill Company to Miller & Vidor Lumber Company, dated January 11, 1910. The deeds thus named cover the land claimed by it in this suit.

"The defendant Miller-Vidor Lumber Company is relying upon a presumption of a deed or grant unto its remote grantor William McFarland Lewis.

"The land in controversy was assessed to William Myers in 1853, James Walea in 1854 and from 1856 to 1864 inclusive to John Merriman. From 1865 to 1871, a period of six years, it was not assessed to anyone. In 1872 and 1874 it was assessed to C. L. Bonville, but there is no record of assessment for 1873. In 1875 it was assessed to Mrs. Ella Bonville with no record of as-

sessment for 1876. In 1877 and 1879, two hundred acres were assessed to William McFarland Lewis. During the years 1881, 1882, 1885, 1886, 1889 and 1890 two hundred acres of the land were assessed to E. A. Smith. From 1907 to 1909 inclusive, two hundred acres were assessed to Orange Sawmill Company. From 1910 to 1914 inclusive between 186 and 196 acres in the James Enner Survey was not assessed to anyone. In 1915 the record does not show how much land was assessed to Miller-Vidor Lumber Company. From 1916 to 1919 inclusive there is no record of assessment of about two hundred acres in the Enner Survey. The record for 1920 does not show how much land was assessed to Miller-Vidor Lumber Company. In 1921 Miller-Vidor Lumber Company was assessed at 618.5 acres and in 1922, 16.5 acres and they were not assessed in 1923.

"The above assessments were shown by the Comptroller's Record of the State of Texas. The tax collectors record in Orange County, Texas, shows that from 1885 to 1890 A. M. Rogers rendered two hundred acres; from 1891 to 1906 E. A. Smith rendered two hundred acres and for 1907, 1908, 1909, Orange Sawmill Company rendered two hundred acres; that for 1910 and for 1915 to 1925 Miller-Vidor Lumber Company rendered two hundred acres. In 1911, one hundred and eighty-five acres were assessed in the name of an unknown owner. In 1912, one hundred eighty-four acres assessed in the same way, and in 1913, one hundred ninety-four acres so assessed and in 1914, one ninety-six acres so assessed.

"According to said assessments since 1877 no part of said land has been assessed to the plaintiffs and their ancestors.

"On December 27, 1883, A. M. Rogers purchased from W. F. McLewis 600 acres of land more or less, being a part of the Daniel Sinclair, James Enner and J. Peveto Surveys, in Orange County, Texas. A. J. Lyons worked in the swamp under Lewis in 1879, 1880 and 1881 getting out timber that had been deadened by the T. & N. O. R. R. Company. I find that William McFarland Lewis was claiming and holding the land in controversy under Captain Bill Smith and that he did not claim that he was holding the land under C. L. Bonville and Mary Ella Bonville or their predecessors in title.

"I find that from 1871 to 1875 Mary Ella Bonville cut and removed from the James Enner Survey a large number of cypress trees; that on or about June 8, 1877, Mary Ella Bonville claimed the James Enner Survey and that on that date she executed a deed in favor of Sarah Adeline Bonville, Mary Flavilla Bonville, and Florence Lillian Province describing the land in controversy.

"I find that C. L. Bonville and Mary Ella Bonville claimed the land in controversy from the time they acquired it in 1869 un-

til Mary Ella Bonville executed a deed to the land on June 8th, 1877, in favor of Sarah Adeline Bonville and Mary Flavilla Bonville.

"That at no time did Lewis or Rogers claim the land in controversy under or from C. L. Bonville and Mary Ella Bonville or the predecessors in title.

"I find that Lewis' and Rogers' claim, assertion of title, acts of ownership, including rendition for taxes and cutting of timber are referable to Lewis' claim of title under Bill Smith and not under the plaintiffs' ancestors and their predecessors in title.

"I find that Mary Ella Bonville in referring to her deed of January 17th, 1876 to a survey made by Lewis on the Enner survey did not recognize any claim on the part of Lewis to the title to land in controversy.

"From the above findings of fact I conclude as a matter of fact that neither C. L. Bonville and Mary Ella Bonville nor any of their predecessors in title ever executed and delivered to Lewis or Bill Smith any deed to the land and premises involved in this suit.

### "Conclusions of Law.

"From the above findings of fact, I conclude as a matter of law that neither C. L. Bonville and Mary Ella Bonville or their predecessors in title ever conveyed to Bill Smith or William McFarland Lewis or their successors in title, including the defendant Miller-Vidor Lumber Company, the title to the land and premises involved in this suit by deed or otherwise,

"I find as a matter of law that plaintiffs have the record title to the land and premises involved in this suit by a regular chain of title and by inheritance from the sovereignty of the soil unto themselves; that defendant Miller-Vidor Lumber Company has no right, title or interest in and to the same and that plaintiffs ase entitled to judgment for the title and possession of said lands."

Plaintiffs in error attack the trial court's conclusions of fact as being without support. It is their contention that, on the undisputed evidence, the conclusions of fact should have been in their favor, and that they should have judgment for the land in controversy.

■ The trial on the former appeal was to a jury, and on conclusion of the testimony plaintiffs in error moved for an instructed verdict. It was their contention on that appeal that on the undisputed evidence they were entitled to judgment. We overruled that contention, saying: "Appellant says the court erred in not instructing the verdict in its favor. This proposition is not sound. Clearly, on the facts of this case, no presumption of law arises that Lewis had acquired the Bonville title."

On the former appeal we made a full, complete, and detailed statement of all the evidence offered reflecting the theory of both parties, and gave a complete history of their titles and a full statement of the evidence offered in support thereof. For the purpose of this opinion, we hereby refer to, and expressly adopt, the conclusions of fact made by us on the former appeal. Plaintiffs in error have not pointed out any new testimony offered on this appeal that would strengthen in the least their theory of the case. An examination of their brief does not present any theory of the evidence, as we understand their brief, not reflected by our former conclusions of fact. Therefore we see no necessity to incumber the record on this appeal with a restatement of the facts, but conclude, as we did formerly, that the issue of title was one of fact, and that we should not disturb the trial court's conclusion thereon.

■■ Plaintiffs in error also complain of the exclusion of evidence as follows:

(a) Judge D. C. Bland, a witness for plaintiffs in error, testified that he made a search for the papers of A. M. Rogers, who held the land under William McFarland Lewis, and that he found no papers relating to the title to this land, and this witness was asked "as to what explanation members of the Rogers family made for their failure to deliver papers, it being intended to show thereby that same had been destroyed and could not be produced." The question propounded to the witness was: "State what explanation you had as to their nonexistence." The witness answered: "Well, they told me—"

This testimony was properly excluded on the theory that it was hearsay. The members of the family of A. M. Rogers were available to plaintiffs in error as witnesses, and could have been brought into court on this issue. Vandergriff v. Piercy, 59 Tex. 371; Land Mortgage Bank v. Quanah Hotel Co. (Tex. Civ. App.) 32 S. W. 573.

(b) Plaintiffs in error were attempting to prove by the witness A. J. Lyons that the land in controversy was generally known in the community where it was situated as the William McFarland Lewis or A. M. Rogers land. The following question was asked the witness: Whether or not "it was generally understood in or among the people out there that it was Mr. Rogers' land."

The exclusion of this testimony was error. This same proposition was before us on the former appeal, and we said: "Evidence that the land was generally known in the community as belonging to [Rogers] was admissible on the issue of the presumption of a grant," citing authorities in support of that rule.

Under that ruling the court should have received this testimony. However, on the record now before us, this ruling was harmless. The trial court expressly found "that William McFarland Lewis was claiming and

holding the title in controversy under Captain Bill Smith and that he did not claim that he was holding the land under C. L. Bonville or Mary Ella Bonville or their predecessors in title." That testimony, had it been received, would have been admissible only on the issue of a claim to the land by Rogers and Lewis, and, the court having found that claim, the exclusion of the testimony was harmless error.

Plaintiffs in error make the following additional assignments, which were overruled on the former appeal, and without further discussion we hereby adopt what we there said in disposing of these assignments: (a) The court erred in receiving in evidence the purported deed from Mary E. Province et al. to Sarah Adeline Bonville et al., because it appeared therefrom that Mary E. Province was a married woman, incapable of executing such deed, and also appears that her husband did not execute same; that she signed the name of her husband to the deed, and attempted to acknowledge it for herself individually and as his agent. (b) The power of attorney from James Enner to James Walea was inadmissible as a conveyance or link in the chain of title, because such instrument was not a transfer or conveyance of the land mentioned therein, and did not operate to convey any title out of the grantor.

From what we have said it follows that the judgment of the trial court must be affirmed, and it is accordingly so ordered.